# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| HUNTSVILLE GOLF DEVELOPMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1-08-00006 |
|  | ) | JUDGE HAYNES |
|  | ) | |
| BRINDLEY CONSTRUCTION COMPANY, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## M E M O R A N D U M

Plaintiff, Huntsville Golf Development, Inc., an Alabama corporation, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute, against the Defendants: Brindley Construction, LLC (formerly The Brindley Company, LLC), a Tennessee limited liability company, Brindley Construction Group, L.L.C., a Tennessee limited liability company, The Brindley Company (formerly Brindley Development Corporation), a Tennessee corporation, Brindley & Associates, Inc., a Tennessee corporation, Brindley Development Company, L.L.C., a Tennessee limited liability company, Brindley Holdings, L.P., a Tennessee limited partnership, Brindley Homes Corporation, a Tennessee corporation, The Brindley Company, L.P., a Tennessee limited partnership, Brindley Construction Company, Inc., a Tennessee corporation, (collectively, the "Brindley entities"), Robert Brindley, Sr., a Tennessee citizen, and Ronald B. Brindley, a Tennessee citizen, (collectively, the "Individual Defendants").

Plaintiff asserted claims to enforce a judgment through piercing the corporate veil, improper dissolution and fraudulent conveyance of assets. The Court denied Defendants' motions to dismiss and lifted the stay and authorized discovery. (Docket Entry No. 31). After discovery and motions for summary judgment, the Court denied Defendants' motions for summary judgment. (Docket Entry No. 162). Plaintiff's claims proceeded to trial without the intervention of a jury, and on August 4, 2011, the Court entered judgment for Plaintiff against Defendants Brindley Construction, LLC (formerly The Brindley Company, LLC), Brindley Construction Group, L.L.C., The Brindley Company (formerly Brindley Development Corporation), Brindley & Associates, Inc., Brindley Development Company, L.L.C., Brindley Holdings, L.P., Brindley Homes Corporation, The Brindley Company, L.P., Brindley Construction Company, Inc., and Robert Brindley, Sr. in the amount of $376,316.75, plus attorney's fees, costs, and interest as further determined by the Court. (Docket Entry No. 236).

On August 7, 2011, Plaintiff filed its bill of costs requesting taxable costs in the amount of $26,693.29. Defendants objected, arguing that Plaintiff should only be awarded costs in the amount of $14,509.66. On September 6, 2011, the Clerk of Court entered a final taxation of costs in the amount of $14,509.66. The Clerk noted that Plaintiff raised "what may be potentially meritorious exceptions with respect to the taxation of costs," but that "[a]bsent controlling case law in this Circuit, the exercise of discretion in deciding whether costs not previously construed as taxable costs by this Court should now be taxed is not the role of the Clerk. That exercise of discretion is a matter for the Court." (Docket Entry No. 255).

Before the Court are Plaintiff's motion to review Clerk's final taxation of costs (Docket Entry No. 270) and motion for attorney's fees (Docket Entry No. 240). As a prevailing party, Plaintiff

2

requests an award of costs under Fed. R. Civ. P. 54(d) in the amount of $26,693.29 and attorney's fees in the amount of $581,026.31. Also, before the Court are Plaintiff's motion to determine the applicable rate of interest (Docket Entry No. 238) and motion to reconsider (Docket Entry No. 267). The Court will address each motion in *seriatim*.

## I. COSTS

In this diversity action, the granting of an award of costs is governed by Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. Williams v. Hevi-Duty Elec. Co., 122 F.R.D. 206, 210 (M.D. Tenn. 1988) ("Title 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d) apply generally to all cases unless there is specific contrary guidance."); Gobbo Farms & Orchards v. Poole Chemical Co., Inc., 81 F.3d 122, 123 (10th Cir. 1996) ("'In a diversity case, federal law controls in regard to the assessment of costs.'") (citation omitted); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2669 (3d ed. 1998). Fed. R. Civ. P. 54(d) states that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party." The Sixth Circuit has interpreted this language to conclude that a presumption exists in favor of awarding costs, but a trial court may disallow such an award at its discretion. Knology v. Insight Communications Co. LP, 460 F.3d 722, 726 (6th Cir. 2006).[1] "[I]t is incumbent on the losing party to overcome such presumption, since the

---

[1] The Court notes that its discretion is limited.

The rule establishes a norm of action: prevailing parties are entitled to their costs as of course. Departures from the rule are permitted; however, "when rules prescribe a course of action as the norm but allow the district court to deviate from it, the court's discretion is more limited than it would be if the rule were nondirective."

White & White v. Am. Hosp. Supply Corp., 786 F.2d 728, 731-32 (6th Cir.1986) (citation omitted).

3

denial of costs is in the nature of a penalty." Serena v. Manzano, 616 F.2d 1165, 1167 (10th Cir 1980).

The Sixth Circuit has "'identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the presumption in favor of a cost award, including the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs.'" Knology, 460 F.3d at 726-27 (citation omitted)' see White & White, 786 F.2d at 730 (describing circumstances where denial of costs was a proper exercise of a court's discretion where costs incurred by a prevailing party were "unnecessary or unreasonably large," cases where a prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues, cases where a prevailing party's recovery is so insignificant that the judgment is practically a victory for the defendant and cases that are "close and difficult.") (citations omitted).

Factors that should be ignored by a district court when determining whether to exercise its discretion and deny costs include the size of a prevailing party's recovery and the ability of a prevailing party to pay his or her costs. White & White, 786 F.2d at 730; but see Singleton, 241 F.3d at 539 ("Although the ability of the winning party to pay his own costs is irrelevant, another factor weighing in favor of denying costs is the indigency of the losing party."). The good faith that a losing party demonstrates in filing, prosecuting or defending an action is a relevant factor that may be considered, but in the absence of other relevant factors is an insufficient basis for denying costs. Id.; see id. at 731 ("Good faith without more . . . is an insufficient basis for denying costs to a prevailing party."); see also Goosetree v. State of Tennessee, 796 F.2d 854, 864 (6th Cir. 1986) (stating that the district court's denial of costs because the plaintiff's case was not frivolous was "clearly an incorrect standard."); Reed v. Cracker Barrel Old Country Store, Inc., 171 F. Supp.2d

4

751, 756 (M.D. Tenn. 2001). Likewise, the propriety with which a losing party conducts the litigation is another relevant, but insufficient basis for denying costs. Id.

To determine which costs are recoverable, 28 U.S.C. § 1920 provides that a judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "In seeking costs under Rule 54(d), the prevailing party has the burden of establishing that the expenses he seeks to have taxed as costs are authorized by applicable federal law, including proof of necessity and reasonableness under 28 U.S.C. § 1920." Berryman v. Hofbauer, 161 F.R.D. 341, 344 (E.D. Mich. 1995). In making its determination to award or deny costs, a district court must make factual findings. Phelan v. Bell, 8 F.3d 369, 375 (6th Cir. 1993).

Defendants object to the following: the inclusion of *pro hac vice* fees in the amount of $150.00, PACER[2] charges in the amount of $371.28, and fees in the amount of $762.50 paid to clerks of other courts and to some of the fees to the clerk of this Court; costs for printing mediation briefing books in the amount of $115.85; and fees for in house copies in the amount of $10,784.00. The Court will address each objection in turn.

### A. Fees of the Clerk

---

[2]Public Access to Court Electronic Records.

Neither Rule 54 nor § 1920 specifically authorize *pro hac vice* admission fees to be taxed as costs. The Sixth Circuit has not addressed whether *pro hac vice* fees are taxable costs. Some courts have awarded *pro hac vice* fees under § 1920. See Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009); Glastetter v. Sandoz Pharms. Corp., No. 1:97cv131ERW, 2000 WL 34017154, at *1 n. 2 (E.D. Mo. Oct.3, 2000); Davis v. Puritan-Bennett Corp., 923 F. Supp. 179, 181 (D. Kan.1996) (awarding *pro hac vice* fees and noting, "Plaintiff selected the forum and compelled defendant to defend itself in this district."); Roll v. Bowling Green Metal Forming, LLC, No. 1:09-CV-00081-TBR, 2010 WL 3069106, at *2 (W.D. Ky. Aug. 4, 2010); Aerotech Res., Inc. v. Dodson Aviation, Inc., 237 F.R.D. 659, 663 (D. Kan.2005).

Many courts, however, have elected not to award *pro hac vice* fees under § 1920. See Conn v. Zakharov, No. 1:09 CV 0760, 2010 WL 2293133, at *1 (N.D. Ohio June 14, 2010); Vistein v. American Registry of Radiologic Technologists, No. 1:05 CV 2441, 2010 WL 918081, at *5 (N.D. Ohio March 10, 2010) (quoting Abrams v. Van Kampen Funds, Inc., 2006 U.S. Dist. LEXIS 6778, at *14-15, 2006 WL 452419 (ND Ill. Feb. 21, 2006) (holding *pro hac vice* fee unrecoverable as cost because "it is the attorney's choice as to where to seek admission and where to practice")); Gallagher v. C.H. Robinson Worldwide, Inc., 2008 U.S. Dist. LEXIS 32473, at *3, 2008 WL 1781358 (N.D. Ohio April 18, 2008) ("there is no Sixth Circuit decision, Judicial Conference statement or statutory provision expressly authorizing recovery by the winning party of the cost incurred in filing pro hac vice motion"); Halliburton Co. v. Ward, No. 06-45-C, 2007 WL 2702214, at *2 (W.D. Ky. Sept. 12, 2007); Exhibit Icons, LLC v. XP Companies, LLC ., No. 07–80824–CIV, 2009 WL 3877667, at *1 (S.D. Fla. Nov.18, 2009); Lofton v. McNeil Consumer & Specialty Pharm., No. 3:05–CV–1531–L, 2011 WL 206165, at *1 (N.D.Tex. Jan.4, 2011) (*pro hac vice* fees "are an expense that an attorney

6

pays for the privilege of practicing law in a district and should not be taxed to a plaintiff simply because a defendant chooses to be represented by counsel not admitted to practice in the district"); Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1460 n.2, 1459-60 (M.D. Ala. 1997) (after reviewing 28 U.S.C. § 1914 that specifies the fees the clerk may charge in civil actions other than habeas corpus, the court noted that *pro-hac-vice* fees are not authorized by § 1914 and "are a creature of the courts" that are neither authorized by statute nor included in the schedule of fees authorized by the Judicial Conference in concluding that *pro hac vice* fees are not recoverable as costs).

Based on the weight of authority, the Court concludes that *pro hac vice* fees are an expense that an attorney pays for the privilege of practicing law in a district and unrecoverable under § 1920.

Defendants contend that PACER fees are not recoverable under § 1920. Plaintiff did not address this objection in its exception to the Clerk's notice of taxation of costs (Docket Entry No. 246) or in its response (Docket Entry No. 271), and its claim for PACER fees is therefore deemed abandoned. In any event, "PACER charges are not costs that are recoverable under § 1920." Madison Capital Co., LLC v. S & S Salvage, LLC, No. 4:08–CV–00134–JHM, 2011 WL 3667673, at *2 (W.D. Ky. Aug. 22, 2011); Thompson v. Quorum Health Resources, LLC, 2010 WL 2044542, at *7 (W.D. Ky. May 21, 2010); Vistein, 2010 WL 2293133, at *9 (citing Doria v. Class Action Services, LLC, 261 F.R.D. 678 (S.D. Fla. 2009) (PACER fees nonrecoverable under Section 1920)). Accordingly, the Court concludes that Plaintiff is not entitled to these costs under § 1920.

Defendants object to the fees paid to clerks of other courts and to some of the fees to the clerk of this Court that were "investigatory." Plaintiff contends that its costs paid to the clerks in the Northern District of Alabama and the Middle District of Tennessee should be included, if not in the category of "fees of the clerk," then in the category of "fees for exemplification and the costs of

7

making copies of any materials where the copies are necessarily obtained for use in the case" because the documents were either introduced into evidence at trial, provided to Defendants in discovery or both. Plaintiff argues that "[i]n each and every instance, these records were vital for the prosecution of this case, and, in many instances, were introduced as evidence at trial and became parts of the record."

Plaintiff cites costs incurred on February 11, 2009 ($45.00), August 7, 2009 ($45.00), August 17, 2009 ($180.00), August 28, 2009 ($60.50), January 29, 2010 ($45.00), February 18, 2010 ($91.00), August 13, 2010 ($45.00) and September 7, 2010 ($116.50).[3] See Docket Entry No. 237, Exhibit 2 at 1. Yet, the Court is unable to find that these copies were reasonable and necessarily obtained for use in the case. The Court is unable to discern what specific documents were obtained and which fees were associated with which documents. "The party seeking costs must not only show that the costs claimed are recoverable, but must also provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the Court." Vistein, 2010 WL 2293133, at *4. Accordingly, the Court concludes that Plaintiff is not entitled to these costs under § 1920.

### B. Fees and Disbursements for Printing

Defendants object to the costs for printing mediation briefing books in the amount of $115.85. Defendants contend that such costs are unrecoverable under § 1920 and the materials were not required for mediation and therefore were unnecessary. Plaintiff asserts that costs for "mediation briefing books" were incurred based upon a Court ordered mediation and should be recoverable. The

---

[3]Plaintiff does not cite costs incurred on August 18, 2009 ($103.00), October 8, 2009 ($11.00), March 1, 2010 ($9.50) and March 3, 2010 ($11.00). See Docket Entry No. 237, Exhibit 2 at 1. Thus, the Court deems Plaintiff's initial request for these fees as abandoned.

8

Magistrate Judge's order instructed the parties to email their settlement conference statements, setting forth the information that should be contained therein. (Docket Entry No. 233). Accordingly, the Court concludes that Plaintiff's mediation briefing books were not necessarily incurred by Plaintiff and are not recoverable under § 1920.[4]

### C. Fees for Exemplification and the Costs of Making Copies of Any Materials Where the Copies are Necessarily Obtained for use in the Case

Defendants object to the inclusion of fees for "Babovich & Spedale In House Copies (@ 2.5% of account legal fees–1/2 of firm's normal client charge)" in the amount of $10,678 and for "Harwell Plant In House Copies (424 pages @ .25 per page)" in the amount of $106 because such fees appear excessive and there is not any supporting documentation as to what copies were made or for what purpose. Specifically, Defendants argue that Plaintiff does not provide the number of copies made for the "Babovich & Spedale In House Copies" entry or a per copy charge, but instead bases it fee on a percentage of its attorneys' fees. According to the affidavit in support of Plaintiff's costs, "The law firm of Babovich & Spedale uses a methodology for billing copying and transmission (faxes, long distance charges, etc.) at a rate which results in copying (Xeroxing) costs of approximately $.07 per page." (Docket Entry No. 237, Exhibit 2 at 66). The affidavit further provides, "In the bill of costs and in the calculation of attorney's fees, submitted in Huntsville Golf Development, Inc. v. Brindley Construction Company, Inc. et al., Babovich & Spedale charged for copying and transmission costs at half its normal rate, which result in approximately 3.5 cents per copy." Id. Defendants contend that Plaintiff's counsel fails to elaborate on the "methodology" or provide the method by which the alleged per page charge was figured, or the amount that is actually

---

[4] The Court notes that the cases cited by Defendants are inapposite as those cases relate to the denial of *mediator fees*.

9

attributable to faxes and long distance charges that are not recoverable under § 1920. Further, Defendants contend that there is not any supporting documentation for the Babovich & Spedale claim or the Harwell, Plant & Williams claim as to what copies were made or for what purpose. Defendants do not object to the charges incurred in preparation of bench books listed under "Fees and Disbursements for Printing."

Plaintiff contends that its request includes the cost of reproducing numerous documents in discovery for the benefit of opposing counsel and this action involved many depositions to which Plaintiff attached numerous exhibits and provided copies of such exhibits to opposing counsel and Defendants' witnesses. Further, Plaintiff argues that many of the copying costs were necessitated by its responses to the eleven motions filed by Defendants that were denied by the Court. Plaintiff also argues that the production of the bench books introduced at trial that was produced by an outside company required Plaintiff to provide that company with numerous in house copies to facilitate the production of the bench books.

The Sixth Circuit has cautioned that courts should not simply "rubber stamp" a party's photocopying expenses without examining the costs for reasonableness. Bowling v. Pfizer, Inc., 132 F.3d 1147, 1151-52 (6th Cir.1998) ("Allowing a several thousand dollar payment for [in-house] photocopying expenses without looking into the cost per photocopy is exemplary of an impermissible laxity"). "Photocopying and printing costs are subject to greater scrutiny than other costs." Aubin Industries, Inc. v. Smith, No. 1:04-cv-681, 2009 WL 1674845, at *6 (S.D. Ohio June 15, 2009) (citing Bowling, 132 F.3d at 1152 ("On remand, the district court should cast a strict eye toward counsel's [photocopying] expense submissions")). "The burden is on the party seeking reimbursement for photocopying costs to show that the copies were necessary for use in the case."

10

Hartford Financial Services Group, Inc. v. Cleveland Public Library, No. 1:99 CV 1701, 2007 WL 963320, at *6 (N.D. Ohio March 28, 2007) (citing Charboneau v. Severn Trent Labs., No. 5:04cv116, 2006 WL 897131, at *2 (W.D.Mich.2006)). "The description need not be 'so detailed as to make it impossible economically to recover photocopying costs,' but it must be 'the best break down obtainable from retained records.'" Charboneau, 2006 WL 897131, at * 2 (quoting Rice v. Sunrise Express, Inc., 237 F. Supp.2d 962, 981 (N.D. Ind. 2002) (quoting Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir.1991)).

"Photocopying costs have been allowed as costs to the extent that the copies are used as court exhibits or were furnished to the court or the opposing counsel. Money spent to copy documents for the litigant's own use are not recoverable." Freier v. Freier, 985 F. Supp. 710, 713 (E.D. Mich. 1997) (citation omitted); State of Illinois v. Sangamo Constr. Co., 657 F.2d 855, 867 (7th Cir. 1981) ("The expense of copying materials reasonably necessary for use in the case are recoverable costs under 28 U.S.C. § 1920(4)."). Recoverable costs include "costs for photocopying documents necessary for maintenance of the action, including copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the court's consideration." Jordan v. Vercoe, No. 91-1671, 966 F.2d 1452, 1992 WL 96348, at *1 (6th Cir. May 7, 1992). Yet,

> Copies obtained only for the convenience of counsel, including extra copies of filed papers and correspondence, are ordinarily not recoverable. Fla. Keys Citizens Coalition, Inc. v. United States Army Corps of Eng'rs, 386 F. Supp.2d 1266, 1270 (S.D. Fla.2005); Wyne v. Medo Industries, Inc., 329 F. Supp.2d 584, 590 (D. Md.2004); Riley v. UOP LLC, 258 F. Supp.2d 841, 843 (N.D. Ill .2003). Where it appears that a party's non-itemized request for photocopying charges includes amounts that are not reimbursable under § 1920(4), the court may reduce the number of copies to account for copies obtained for the convenience of counsel rather than for use in the case. See In re Merritt Meridian Constr. Corp ., 95 F.3d 153, 173 (2d

11

Cir.1996) (affirming 70% reduction of non-itemized photocopying costs to reflect court's estimate of cost of photocopying exhibits and papers submitted for trial); Rice v. Sunrise Express, Inc., 237 F. Supp.2d 962, 981 (N.D. Ind. 2002) (reducing copies by 20% to account for possibility that some were made for convenience of counsel).

Charboneau, 2006 WL 897131, at *1, 2 (reducing the number of copies associated with the documents filed with the court by 75%).

The Court cannot determine from the documentation provided by Plaintiff how many copies were for the Court or the opposing party, and how many copies were for the convenience of counsel. Plaintiff's documentation is too vague to assess whether the copies were reasonable and necessary expenses in this action. The Court also notes that Plaintiff missed several deadlines set forth in case management orders that resulted in copying costs to Plaintiff as a result of Defendants filing motions based upon Plaintiff's failure to meet such deadlines. See (Docket Entry Nos. 19, 24, 43, 98 and 128). At a December 7, 2009 hearing, in ruling on Defendants' motion to strike (Docket Entry No. 128), the Court stated, "I understand your point. Your point is well taken. If -- I may address this at the end concerning an award of costs or something like that." (Docket Entry No. 136 at 14). Yet, the Court does not doubt that Plaintiff incurred some copying costs in the maintenance of this action, including copies attributable to discovery, copies of exhibits and in conjunction with submitting documents to the Court and opposing counsel. Yet, the Court cannot determine that amount based on the documentation before it. Thus, based on the foregoing, the Court concludes that Plaintiff's request should be discounted by 50% and award Plaintiff $5339 in costs for photocopies. See Hartford, 2007 WL 963320, at *8 (reducing costs by 30% where court was unable to determine the exact amount attributable to convenience copies); Aubin, 2009 WL 1674845, at *7 (denying charges where court was unable to determine what charges were associated with proper copying costs and

12

what charges were associated with inappropriate costs, such as extra copies for convenience of counsel); J-Way Leasing, LTD v. American Bridge Co., No. 1:07 CV 3031, 2010 WL 816439, at *5 (N.D. Ohio March 4, 2010) ("[T]his Court will only deduct 20% from J-Way's request to tax as costs $27,177.94 for 'copies-paper' and 20% from its request to tax as costs $14,670.76 for 'Document Imaging.' These deductions account for the Court's estimate of costs attributable to convenience copies and the labeling of exhibits."); Irwin Seating Co. v. International Business Machines Corp., No. 1:04-CV-568, 2008 WL 1869055 (W.D. Mich. April 24, 2008) (unable to determine from the documentation provided how many copies were for the Court or the opposing party, and how many copies were for the convenience of counsel, the court discounted the request to tax as costs by 40%); Miles Farm Supply, LLC v. Helena Chemical Co., No. 4:06-CV-23-R, 2008 WL 4561574, at *5 (W.D. Ky. 2008 Oct. 10, 2008) (reducing copying costs by 50% because the court could not determine from the documentation provided how many copies were for the court or the opposing party, and how many copies were for the convenience of counsel).

Plaintiff contends that any costs denied should be added onto its claim for attorney's fees. This contention will be addressed in the Court's discussion of Plaintiff's motion for attorney's fees.

## II. ATTORNEY'S FEES

Plaintiff contends that the contract between the parties that Defendants originally breached allowed for an award of attorney's fees for suits arising out of the performance of the contract and that the Construction Industry Arbitration Rules ("CIAR"), under which the breach of contract claim was initially arbitrated, also authorized an award of attorney's fees. Moreover, Plaintiff contends that its claim of piercing the corporate veil relates back to the original judgment on the breach of

contract claim and based upon that contract Plaintiff is entitled to recover its attorney's fees incurred in the prosecution of this action.

In response, Defendants contend, in sum, the following: (1) that this is an action to enforce a judgment, not a breach of contract action, and thus, there is not any statute or contract authorizing attorney's fees; (2) that a court cannot award additional attorney's fees when confirming an arbitration award as such claims should have been included in the previous arbitration; (3) that the contract's provisions do not provide for attorney's fees under the facts; (4) that neither the arbitration award nor the Northern District of Alabama's previous judgment provided for attorney's fees; (5) that Defendants have consistently denied Plaintiff's claim for attorney's fees; and (6) that in the event the Court does award attorney's fees, the amount of attorney's fees and other expenses requested by Plaintiff are unreasonable.

## A. Factual Background

On December 18, 1989, Plaintiff and BCCI executed an American Institute of Architects ("AIA"), "Standard Form Of Agreement Between Owner And Contractor, 1987 Edition" for construction of condominium residential units in Huntsville, Alabama. (Docket Entry No. 187, Stipulation at ¶¶ 1-2). On February 12, 1990, the parties executed a second AIA "Standard Form Of Agreement Between Owner And Contractor, 1987 Edition" for the construction of the same condominium residential units in Huntsville. Id. The AIA contracts are nearly identical in terms and incorporate by reference the AIA's "General Conditions of the contract for Construction, AIA Document A201, 1987 Edition." (Docket Entry No. 241, Exhibits 1 and 2 at 6). The relevant provisions of the General Conditions are as follows:

**3.18    INDEMNIFICATION**

14

**3.18.1** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work,[5] provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

\* \* \*

**4.5** **ARBITRATION**

**4.5.1** **Controversies and Claims Subject to Arbitration.** Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association,[6] and judgment upon the award rendered by the arbitrator or arbitrations may be entered in any court having jurisdiction thereof . . . .

\* \* \*

---

[5]"The Work" is defined as follows:

**1.1.3 THE WORK**

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

(Docket Entry No. 241, Exhibit 5 at 6).

[6]Section R-45(d) of the Construction Industry Arbitration Rules of the American Arbitration Association provides: "The award of the arbitrator may include– an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." Id., Exhibit 7.

15

**4.5.6  Claims and Timely Assertion of Claims.**  A party who files a notice of demand for arbitration must assert in the demand all Claims then known to that party in which arbitration is permitted to be demanded. . . .

* * *

**14.2.4**  If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, such excess shall be paid to the Contractor.  If such costs exceed the unpaid balance, the Contractor shall pay the difference to the Owner. . . .

Id., Exhibit 5 at 10, 12, 13, 1224.

A dispute arose between the parties, and pursuant to the agreements, the parties entered into arbitration. (Docket Entry No. 187, at ¶ 5).  In its arbitration demand, Plaintiff asserted claims for breach of contract, negligence and misrepresentation. (Docket Entry No. 241, Exhibit 6 at ¶¶ 10-18). Plaintiff sought judgment "in the amount of $293,350.00, plus interest, costs, attorneys' fees, and all lost profits incurred by [Plaintiff] to be determined at a later time as a direct and proximate result of Brindley's breach of the . . . contract." Id. at ¶¶ 10, 12, 18.  Plaintiff also sought "such damages, compensatory and punitive, to which [Plaintiff] may be entitled." Id. at ¶¶ 12, 18.  In its Answer and Counterclaim, BCCI requested that "all cost of this action should be assessed against [Plaintiff]." (Docket Entry No. 241, Exhibit 8 at 3).

On August 16, 1992, an arbitrator awarded Plaintiff $376,316.75 against BCCI.  (Docket Entry No. 187, at ¶ 6).  Of that amount, $6,316.75 was for administrative fees and expenses of the American Arbitration Association and for compensation and expenses of the arbitrators that Plaintiff previously advanced.  (Docket Entry No. 241, Exhibit 9).  On August 24, 1992, Plaintiff filed a complaint in the United States District Court, Northern District of Alabama, Northeastern Division, seeking a confirmation of the arbitration award pursuant to 9 U.S.C. § 9. (Docket Entry No. 187,

16

at ¶ 7).  On December 23, 1992, the Alabama District Court confirmed the arbitrator's award.  Id.
at ¶ 8.  The district court recognized that "Paragraph 4.5.1 of the General Conditions for the Contract
for Construction" was incorporated by reference into the contract.  (Docket Entry No. 123, Exhibit
1 at 11).  The district court further noted that "[a]lthough the arbitrator's award was in the form of
a lump sum, it is clear that the arbitrators awarded at least some amount of delay damages. . . . [T]he
claims presented by [Plaintiff] regarding damages other than delay damages totaled only
$171,159.00. . . .  The arbitrators awarded [Plaintiff] $370,000.00 in damages."  Id. at 9 n.6.  The
district court awarded Plaintiff "the sum of $376,316.75 and its costs of this action."  (Docket Entry
No. 241, Exhibit 4).  On April 24, 2001, Plaintiff registered the Judgment of the United States
District Court for the Northern District of Alabama in the Middle District of Tennessee.  (Docket
Entry No. 187, at ¶ 9).

Plaintiff filed this action to enforce a judgment through piercing the corporate veil, improper
dissolution and fraudulent conveyance of assets.  Plaintiff sought judgment in the amount of
$395,316.75, together with legal interest from the date of the initial judgment, plus costs and
attorney's fees.  (Docket Entry No. 1, at 18-20).  On August 4, 2011, the Court entered judgment for
Plaintiff against Defendants in the amount of $376,316.75, plus attorney's fees, costs, and interest
as further determined by the Court.  (Docket Entry No. 236).

### B. Conclusions of Law

Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless
a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., _U.S._, 130 S.Ct.
2149, 2156-57 (2010); Wilson v. Int'l Bhd. of Teamsters, 83 F.3d 747, 753 (6th Cir.1996).  As
previously determined by this Court, Tennessee law governs this diversity action.  (Docket Entry No.

17

235, Court's Memorandum at 27). Tennessee follows the "American Rule" for awarding attorney's fees. John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W.2d 528, 534 (Tenn. 1998). Under Tennessee law, contractual provisions for paying reasonable attorney's fees in the event of a breach are valid. Carrington v. W.A. Soefker & Son, Inc., 624 S.W.2d 894 (Tenn. Ct. App. 1981).

Defendants contend that this action is a judgment collection action, not a breach of contract action, and that the contract did not provide for attorney's fees post judgment. Here, a separate collection action was not created. As this Court previously determined:

> "A suit against an alter ego in which the plaintiff seeks to pierce the corporate veil in connection with a previously-obtained judgment against a corporation is not 'a separate and independent cause of action.'" Oceanic Schools, Inc. v. Barbour, 112 S.W.3d 135, 145 (citation omitted). "When a plaintiff obtains a judgment against the corporate entity, it also obtains a judgment as to any of its alter egos." Boles v. National Dev. Co., Inc., 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005) (emphasis added); Oceanic Schools, 112 S.W.3d at 145; Altice v. NATS, Inc., 2008 WL 1744571, at *2.

(Docket Entry No. 235 at 31).

The initial judgment was based upon the contract between Plaintiff and BCCI. The Court concluded that liability for the prior judgment existed as to the Brindley entities and Robert Brindley, Sr., as alter egos. Id. at 3, 35. Based upon the contract, Plaintiff moved for an award of attorney's fees in its arbitration demand. Thus, Defendant's argument that this action is a new claim for a judgment debt is without merit as this action to pierce the corporate veil relates back to the prior judgment and is not a separate and independent cause of action.

Defendants also contend that Plaintiff cannot base its claim for attorneys's fees on a contract that has already been arbitrated and reduced to judgment. In essence, Defendants contend that because the contract contained an arbitration clause, the claim for attorney's fees should have been

submitted to the arbitrator, citing <u>Own Capital, LLC v. Celebrity Suzuki of Rock Hill, LLC</u>, No. 11–10109, 2011 WL 3300696 (E.D. Mich. Aug. 2, 2011). Plaintiff argues that its veil piercing action for which it seeks to enforce its contractual right to attorney's fees could only be brought before this Court, not an arbitrator. Plaintiff asserts that it is not seeking attorney's fees related to the initial litigation and arbitration against BCCI, but rather it seeks from the veil piercing action against the Defendants, over which the arbitrator did not have jurisdiction, attorney's fees provided for by the contract.

Defendants, other than BCCI, were not parties to the arbitration agreement. As non-signatories to the agreement, these Defendants were not parties to the agreement and, thus, did not manifest an intent to submit any disputes to or be bound by arbitration. <u>R.G. Zachrich Const., Inc. v. Local 1581, Ohio and Vicinity Regional Council of Carpenters</u>, 621 F. Supp. 2d 492, 496 (N.D. Ohio 2008). "When a non-signatory challenges an arbitration panel's jurisdiction, a court, rather than an arbitration panel, must independently determine whether the organizations are alter-egos." <u>Id</u>. (collecting cases).

Here, Plaintiff's action was to determine whether the other Defendants were alter egos of BCCI, and therefore it was necessary for Plaintiff to bring this action before the Court as Defendants would have assuredly objected to the arbitrator's jurisdiction. To accept Defendants' argument would subvert the arbitration award and reward Defendants for their "scheme to defraud the creditors of BCCI" as determined by the Court. (Docket Entry No. 235 at 35). Accordingly, Defendants' argument fails.

Defendants contend that even if the examination of the contract is deemed appropriate by the Court the contract between the parties does not provide for attorney's fees under the facts.

19

Defendants argue that Section 3.18.1 applies in indemnity situations where the owner incurs expense to a third party because of the contractor's negligence and that Section 3.18.1 does not apply to the enforcement of a judgment after it has been rendered. Plaintiff contends that under Section 3.18.1 the contractor may be liable to the owner for "attorneys' fees, arising out of or resulting from performance of the Work." Plaintiff cites <u>Adena Corp. v. Sunset View Ltd.</u>, No. 00CA005, 2001 WL 361007 (Ohio App. 2001).

In <u>Adena</u>, the plaintiff asserted a breach of contract claim. <u>Id</u>. at *1. The arbitrator awarded attorney's fees under Section 3.18.1. <u>Id</u>. at *3. Adena argued that legal fees were only recoverable under the agreement for personal injury claims or damages to property other than the project and that because "[t]he only damages alleged by Sunset are those to Project property," legal fees were not recoverable. <u>Id</u>. The Ohio court noted that the arbitrator did not provide a written explanation of his award and given that courts can only disturb an arbitration award under very narrow circumstances concluded that Section 3.18.1 authorized the "arbitrator's award of attorney fees at least in some incidences" and the arbitrator therefore did not exceed his powers in rendering the award. <u>Id</u>.

Similarly, here, Plaintiff asserted in its arbitration demand claims for breach of contract, negligence and misrepresentation and also requested attorney's fees. In rendering the decision, the arbitrator did not provide a written explanation of the award. As stated previously, Plaintiff is not seeking a separate claim for enforcement of a judgment, rather Plaintiff seeks attorney's fees that were incurred in this action to pierce the corporate veil for Defendants' breach of the contract. The Court finds <u>Adena</u> persuasive. In any event, Section R-45(d) of the Construction Industry Arbitration Rules of the American Arbitration Association provides that "[t]he award of the

20

arbitrator may include– an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration." Thus, the Court concludes that the contract does allow recovery of attorney's fees pursuant to Section R-45(d).

Defendant argues that it only requested that "all cost[s] of this action should be assessed against [Plaintiff]" and did not request attorney's fees. Defendant argues that a request for "costs" is separate from and does not include attorney's fees. To be sure, in the context of contract interpretation, the term "costs" does not generally include attorney's fees. Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.3d 303, 310 (Tenn. 2009). Yet, here, BCCI's request for all costs was made in its answer and counterclaim, not in a contract. Further, a literal reading of Section R-45(d) does not mention costs. Thus, the Court concludes that a reasonable interpretation of the request for "all cost[s] of this action should be assessed against [Plaintiff]" includes a request for attorney's fees pursuant to Section R-45(d).

Defendants further argue that the arbitration award does not specify the methodology used by the arbitrator in arriving at the $370,000.00 award. Defendants argue that there were seven elements to Plaintiff's arbitration demand: (1) judgment in the amount of $293,350.00; (2) interest; (3) costs; (4) attorneys' fees; (5) lost profits; (6) other compensatory damages; and (7) punitive damages. Defendants note that the Northern District of Alabama recognized the award included attorney's fees, interest, and costs by stating that "[t]he claims presented by HGD regarding damages other than delay damages total only $171,159.00.... The arbitrators awarded HGD $370,000 in damages." Thus, the district court recognized that the arbitrator awarded delay damages in the amount of $198,841.00 and non-delay damages in the amount of $171,159.00. Defendants argue that non-delay damages could be comprised of lost profits, interest, or other compensatory damages.

21

The Court concludes that Defendants' argument is immaterial as the parties requested attorney's fees under Section R-45(d). This action is not a separate enforcement of judgment claim. This action to pierce the corporate veil relates back to the initial judgment based upon the contract between Plaintiff and BCCI. Because the other Defendants were non-signatories to the contract, the arbitrator would not have jurisdiction over them. Thus, Plaintiff must request its fees against the Defendants other than BCCI before this Court. While the Court is unable to discern the arbitrator's methodology used in arriving at the $370,000 amount, the Court recognizes that Plaintiff did comply with the contract in seeking attorney's fees under Section R-45(d). Accordingly, the Defendants' argument is without merit.[7]

## C. Calculation of Attorney's Fees

Plaintiff seeks attorney's fees and expenses in the amount of $581,026.31. In response, Defendants contend that the wording of the Construction Industry Arbitration Rules is limited to attorney's fees, not other costs or expenses. Additionally, Defendants contend that the amount of attorney's fees requested is excessive.

"In diversity cases, attorneys' fees are governed by state law." Hometown Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 533 (6th Cir. 2011). The Tennessee Supreme Court has held that the appropriate factors to be considered in determining a reasonable attorney's fee include the following:

---

[7]The Court notes that Plaintiff also argues that Defendants waived any objection to this Court's jurisdiction to rule on its motion for attorney's fees because Defendants did not deny the availability of such relief in the pretrial order (Docket Entry No. 187). Yet, listed as an evidentiary dispute, Defendants requested the Court to preclude Plaintiff from arguing that additional attorney's fees and costs could be added to a final judgment, id. at 7, and Defendants also filed a motion in limine (Docket Entry No. 178) to that effect. Accordingly, the Court concludes that Defendants did not waive objection to the issue of attorney's fees.

22

1. The time devoted to performing the legal service.
2. The time limitations imposed by the circumstances.
3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
4. The fee customarily charged in the locality for similar legal services.
5. The amount involved and the results obtained.
6. The experience, reputation, and ability of the lawyer performing the legal service.

Connors v. Connors, 594 S.W.2d 672, 676 (Tenn. 1980); Hometown Folks, 643 F.3d at 535. Courts

also consider the similar factors listed in Tennessee Supreme Court Rule 8, Rule of Professional

Conduct 1.5:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) Whether the fee is fixed or contingent;
(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
(10) Whether the fee agreement is in writing.

Tenn. Sup.Ct. R. 8, RPC 1.5; Keisling v. Keisling, 196 S.W.3d 703, 729–30 (Tenn.Ct. App. 2005);

Hometown Folks, 643 F.3d at 535. "The United States Supreme Court has held that 'the most

critical factor is the degree of success obtained.'" Hometown Folks, 643 F.3d at 535 (quoting

Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

Plaintiff submits the affidavits of Wayne M. Babovich and J. Christopher Williams and an

itemization of the time devoted and expenses incurred in prosecuting this action. (Docket Entry No.

241, Exhibits 13 and 14). In their affidavits, Babovich and Williams attest that their hourly rates and

the hourly rates charged for law clerks and paralegals are reasonable and are within the range of rates that are customarily charged in this community for the types of services rendered in such actions. Id., Exhibit 14. Babovich's charged hourly rate is $225, and Williams's charged hourly rate is $195. Babovich seeks attorney's fees in the amount of $458,499.25, and Williams seeks attorney's fees in the amount of $49,856.75. Babovich seeks expenses in the amount of $55,543.51, and Williams seeks expenses in the amount of $2,666.80.

Defendants object to many of the entries listed in the itemization for attorney's fees for the following reasons: (1) inadequate documentation; (2) the time recorded is excessive; (3) duplicative entries; and (4) failure to identify individuals whose time was billed. Defendants cite marked-up copies of Plaintiff's time sheets for the law firms Babovich & Spedale, PLC and Harwell, Plant & Williams, indicating the entries Defendants argue are inadequate or excessive. (Docket Entry No. 245, Exhibits 1 and 2). In addition, Defendants contend that any award of attorney's fees should not include any portion of time attributable to the case against Ronald B. Brindley. Defendants also contend that any award should be reduced further based upon the contingency fee agreement between Plaintiff and Babovich; Plaintiff has not produced any proof of the experience, reputation, and ability of its attorneys, or that its attorneys were precluded from other employment due to acceptance of this case; this was a judgment collection action that did not involve any novel or difficult questions nor was a particular skill needed to perform the legal service properly; and this action was not an "undesirable" type of action. Finally, Defendants contend that recovery of nontaxable costs or expenses are not contemplated in the Construction Industry Arbitration Rules and are unrecoverable, and to the extent they are, many are excessive.

24

The Court notes that Defendants do not challenge the hourly rates asserted by Plaintiff's attorneys, and the Court concludes that the rates charged are reasonable as customarily charged in the locality. The Court also notes that for Babovich & Spedale, there are various entries for "KO", "SB", "SR", "TK", "CD", "AH", "RL", "SO", "CO", "CB", and "GB" in the total amount of $33,233 and for Harwell, Plant & Williams, there are various entries for "VHH" in the total amount of $7766.25 that are not identified. The Court cannot discern whether they are attorneys, licensed paralegals, or office assistants. Neither Babovich nor Williams makes any mention of any specific individuals with any of those initials in their affidavits. It is Plaintiff's burden to provide sufficient documentation for the hours worked and rates claimed. Hensley, 461 U.S. at 433. Accordingly, the Court will deny those fees in the amount of $33,233 submitted by Babovich & Spedale and $7766.25 submitted by Harwell, Plant & Williams.

After independently reviewing the itemized statements and Defendants' objections, the Court concludes that the following hours submitted by the law firm of Babovich & Spedale, PLC should be denied:

| Date | Name | Description | Hours Denied | Comment |
|------|------|-------------|--------------|---------|
| 4/21/2000 | WMB[8] | CT Chatelain re: any legal obligation to Ed Meyerson | 1.5 | Inadequate documentation |
| 9/7/2000 | WMB | Review of Written Correspondence from Nelson Chatelain | 0.25 | Inadequate documentation |
| 9/29/2000 | WMB | Review of Nelson Chatelain correspondence to Jessie Evans | 0.25 | Inadequate documentation |

---

[8]The entry "WMB" stands for the time billed by Wayne M. Babovich.

| 11/5/2000 | WMB | CT Denneberg re: request for copy of depositions | 0.75 | Inadequate documentation |
|---|---|---|---|---|
| 12/4/2000 | WMB | CT Meyerson re: monies due Najjar Dennaberg | 0.5 | Inadequate documentation |
| 12/14/2000 | WMB | CT Jesse Evans re: Najaar Dennaberg's rep of Huntsville | 0.75 | Inadequate documentation |
| 12/15/2000 | WMB | Review of written correspondence from Darrenburg | 0.25 | Inadequate documentation |
| 12/15/2000 | WMB | Review of written correspondence from Meyerson | 0.25 | Inadequate documentation |
| 12/18/2000 | WMB | CT Denneberg re: request for copy of depositions | 0.5 | Inadequate documentation |
| 12/18/2000 | WMB | CT USDC re: request for copies of orders | 0.5 | Excessive |
| 1/2/2001 | WMB | Memo to and Meeting with Offner | 1.25 | Inadequate documentation |
| 1/2/2001 | WMB | Memo to file re: TC Evans | 0.5 | Inadequate documentation |
| 1/3/2001 | WMB | TC Evans, prior counsel, memo to file | 0.5 | Inadequate documentation |
| 2/8/2001 | WMB | CT Piper re: execute garnishment | 2.25 | Inadequate documentation |
| 2/21/2001 | WMB | CT Piper requesting status of garnishment | 0.25 | Inadequate documentation |
| 4/16/2001 | WMB | Receipt and review of letter from Jordan | 0.25 | Inadequate documentation |
| 4/18/2001 | WMB | CT Piper requesting estimate of charges | 0.5 | Inadequate documentation |
| 4/23/2001 | WMB | Receipt and review of written correspondence from Jordan | 0.25 | Inadequate documentation |
| 6/8/2001 | WMB | Memo to TK re: review file | 0.25 | Inadequate documentation |

26

| 7/24/2001 | WMB | CT Jordan enclosing documents for review | 0.5 | Inadequate documentation |
|-----------|-----|------------------------------------------|-----|---------------------------|
| 8/16/2001 | WMB | CT Jordan requesting status | 0.25 | Inadequate documentation |
| 8/17/2001 | WMB | CT Tennessee SOS re: The Brindley Company, LP | 0.5 | Inadequate documentation |
| 8/31/2001 | WMB | Receipt and review of written correspondence from Jordan | 0.25 | Inadequate documentation |
| 10/2/2001 | WMB | CT Chatelain re: correspondence from Jordan | 0.25 | Inadequate documentation |
| 10/23/2001 | WMB | CT Denneberg re: judgment debtor exam | 0.5 | Inadequate documentation |
| 10/24/2001 | WMB | CT Chatelain re: check from USDC in garnishment will be credited to cost | 0.25 | Inadequate documentation |
| 11/5/2001 | WMB | CT Denneberg re: copy of depositions | 0.25 | Inadequate documentation |
| 11/19/2001 | WMB | CT Jordan re: judgment debtor exam | 0.5 | Inadequate documentation |
| 1/15/2002 | WMB | CT Jordan re: 30(b)(6) deposition dates | 0.5 | Inadequate documentation |
| 2/15/2002 | WMB | CT Jordan re: 30(b)(6) deposition dates | 0.25 | Inadequate documentation |
| 4/10/2002 | WMB | CT Jordan requesting status | 0.25 | Inadequate documentation |
| 4/15/2002 | WMB | CT Jordan re: steps to be taken to move forward | 0.25 | Inadequate documentation |
| 4/16/2002 | WMB | Receipt & Review of Jordan | 0.25 | Inadequate documentation |
| 4/16/2002 | WMB | CT Jordan re: possible document subpoena | 0.5 | Inadequate documentation |
| 4/29/2002 | WMB | Receipt & Review of Jordan | 0.25 | Inadequate documentation |

27

| | | | | |
|---|---|---|---|---|
| 10/16/2002 | WMB | CT Jordan requesting status | 0.25 | Inadequate documentation |
| 11/1/2002 | WMB | Receipt & Review of written correspondence and Discovery from Jordan | 2.75 | Inadequate documentation |
| 12/4/2002 | WMB | CT Jordan requesting status – put on front burner | 0.5 | Inadequate documentation |
| 12/6/2002 | WMB | Review of invoice and CT Jordan re: his invoice | 0.5 | Inadequate documentation |
| 12/20/2002 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.5 | Inadequate documentation |
| 1/16/2003 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |
| 1/22/2003 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.5 | Inadequate documentation |
| 1/27/2003 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |
| 2/3/2003 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.25 | Inadequate documentation |
| 3/27/2003 | WMB | CT Jordan re: payment and put on expedited track | 0.25 | Inadequate documentation |
| 7/3/2003 | WMB | CT Jordan enclosing check and requesting status | 0.25 | Inadequate documentation |
| 7/29/2003 | WMB | Receipt and Review of Correspondence from Jordan and Review of Motion to Compel | 0.75 | Inadequate documentation |
| 7/29/2003 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.5 | Inadequate documentation |
| 8/5/2003 | WMB | Receipt and Review of Court Order | 0.5 | Inadequate documentation |
| 8/12/2003 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |

28

| | | | | |
|---|---|---|---|---|
| 8/13/2003 | WMB | CT Jordan requesting status | 0.25 | Inadequate documentation |
| 8/15/2003 | WMB | CT Chatelain re: copy of correspondence from Jordan | 1.25 | Inadequate documentation |
| 9/12/2003 | WMB | Memo to file | 0.25 | Inadequate documentation |
| 9/22/2003 | WMB | Memo to file re: t/c with Joel Jordan; CT Chatelain re: copy of correspondence from Jordan | 0.25 | Inadequate documentation |
| 9/24/2003 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |
| 9/25/2003 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.25 | Inadequate documentation |
| 9/29/2003 | WMB | Telephone conversation with Jordan and memo to file | 1.5 | Inadequate documentation |
| 10/20/2003 | WMB | Preparation of draft letter to Jordan | 0.75 | Inadequate documentation |
| 1/7/2004 | WMB | Receipt and Review of written correspondence from Chatelain | 0.25 | Inadequate documentation |
| 2/18/2004 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |
| 2/23/2004 | WMB | Receipt and Review of Written Correspondence from Jordan | 0.25 | Inadequate documentation |
| 2/26/2004 | WMB | CT Jordan re: deposition dates | 0.5 | Inadequate documentation |
| 3/2/2004 | WMB | CT Nelson Chatelain | 0.25 | Inadequate documentation |
| 3/9/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 3/11/2004 | WMB | CT Jordan re: deposition dates | 0.5 | Inadequate documentation |
| 3/22/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |

| | | | | |
|---|---|---|---|---|
| 3/24/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 3/25/2004 | WMB | CT Chatlain re: copy of correspondence from Jordan | 0.25 | Inadequate documentation |
| 4/10/2004 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.25 | Inadequate documentation |
| 4/13/2004 | WMB | CT Jordan requesting status | 0.25 | Inadequate documentation |
| 4/27/2004 | WMB | CT Jordan re: deposition dates | 0.25 | Inadequate documentation |
| 5/4/2004 | WMB | CT Jordan re: language for document requests | 4.75 | Inadequate documentation |
| 5/12/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 5/12/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 5/12/2004 | WMB | CT Jordan re: status of depositions | 0.25 | Inadequate documentation |
| 5/14/2004 | WMB | Memo to CD re: discuss research | 0.75 | Inadequate documentation |
| 5/18/2004 | WMB | Memo to file | 0.75 | Inadequate documentation |
| 5/19/2004 | WMB | CT Jordan re: copy of charter for BCC, Inc. | 1 | Inadequate documentation |
| 5/20/2004 | WMB | Review of Notice of Deposition | 0.25 | Inadequate documentation |
| 5/21/2004 | WMB | CT Chatelain re: copy of correspondence from Jordan | 0.5 | Inadequate documentation |
| 6/2/2004 | WMB | CT Jordan re: notices and publications | 0.5 | Inadequate documentation |
| 6/2/2004 | WMB | Receipt and Review of Corporate Documents | 0.5 | Inadequate documentation |

Case 1:08-cv-00006   Document 274   Filed 10/18/11   Page 30 of 47 PageID #: 8790

| 6/3/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
|----------|-----|---------------------------|------|--------------------------|
| 6/4/2004 | WMB | CT Jordan re: depositions | 0.5 | Inadequate documentation |
| 6/7/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 6/8/2004 | WMB | Receipt and Review Jordan | 0.25 | Inadequate documentation |
| 6/9/2004 | WMB | Memo to CD | 0.5 | Inadequate documentation |
| 6/9/2004 | WMB | CT Jordan re: depositions | 0.5 | Inadequate documentation |
| 6/28/2004 | WMB | CT Jordan re: transcripts of depositions | 0.5 | Inadequate documentation |
| 6/28/2004 | WMB | Memo to CD re: file suit | 0.5 | Inadequate documentation |
| 7/12/2004 | WMB | CT C. Patterson Cron | 0.5 | Inadequate documentation |
| 7/13/2004 | WMB | CT C Patterson Cron re: request for copy of his file | 0.25 | Inadequate documentation |
| 7/16/2004 | WMB | CT Jordan re: received transcripts but no documents | 0.25 | Inadequate documentation |
| 7/15/2004 | WMB | Review of deposition transcripts | 5.75 | Inadequate documentation |
| 7/16/204 | WMB | CT Chatelain enclosing documents | 0.25 | Inadequate documentation |
| 8/4/2004 | WMB | CT Jordan re: request documents from Hoover | 0.25 | Inadequate documentation |
| 8/17/2004 | WMB | Memo to file re: Wayne Baker | 0.75 | Inadequate documentation |
| 9/21/2004 | WMB | TC Wayne Baker | 0.5 | Inadequate documentation |

31

| Date | | Description | Hours | Reason |
|---|---|---|---|---|
| 9/22/2004 | WMB | Memo to file | 0.25 | Inadequate documentation |
| 11/18/2004 | WMB | CT Jordan enclosing check in payment of his invoice | 0.25 | Inadequate documentation |
| 11/15/2004 | WMB | E-mail to CD | 0.5 | Inadequate documentation |
| 11/22/2005 | WMB | Interoffice explanation of complaint | 0.25 | Inadequate documentation |
| 1/22/2005 | WMB | Research foreign judgment | 1.75 | Inad documentation; excessive |
| 3/14/2006 | WMB | Review of memo re: deposition excerpts | 1.5 | Inadequate documentation |
| 3/27/2006 | WMB | CT Chatelain re: Huntsville must be revived with Alabama SOS | 0.5 | Inadequate documentation |
| 4/26/2006 | WMB | Receipt and Review of Written Correspondence from Chatelain | 0.25 | Inadequate documentation |
| 6/28/2006 | WMB | Memo to AH re: petition | 0.5 | Inadequate documentation |
| 6/28/2006 | WMB | Meeting with AH | 0.5 | Inadequate documentation |
| 8/4/2006 | WMB | CT Fleming enclosing draft of complaint | 0.75 | Inadequate documentation |
| 10/4/2006 | WMB | CT Fleming re: revisions to complaint | 0.5 | Inadequate documentation |
| 10/4/2006 | WMB | CT Fleming confirming his representation of Huntsville | 0.5 | Inadequate documentation |
| 10/11/2006 | WMB | CT Fleming re: employment contract | 0.5 | Inadequate documentation |
| 10/12/2006 | WMB | CT Chatelain forwarding retainer agreement from TN counsel | 0.25 | Inadequate documentation |

| | | | | |
|---|---|---|---|---|
| 10/25/2006 | WMB | CT Fleming re: pro hac vice | 0.5 | Inadequate documentation |
| 11/22-12/5/2005, 7/20/2007 | WMB | Preparation of Complaint | 4.5 | Excessive; duplicative; inadequate documentation |
| 10/25/2007 | WMB | CT Williams enclosing pro hac vice | 0.5 | Inad doc; excessive |
| 2/16/2008 | WMB | CT Williams enclosing certificate of good standing | 0.25 | Inad doc; excessive |
| 2/18/2008 | WMB | Receipt and Review XXXXX | 0.25 | Inadequate documentation |
| 4/1/2008 | NB[9] | Ronald Brindley's involvement with Defendant corps. | 4.25 | Inadequate documentation |
| 4/2/2008 | WMB | Memo to file | 0.5 | Inadequate documentation |
| 5/20/2008 | WMB | Review and revision of agenda | 1 | Inad doc; duplicative |
| 8/26/2008 | NB | Researching discovery rules for Memo to Authorize Discovery | 2 | Duplicative; excessive |
| 8/29/2008 | NB | Drafting Memo in Support of Motion to Authorize Discovery | 2 | Duplicative; excessive |
| 9/10/2008 | NB | Drafting Memo in Support of Motion to Authorize Discovery | 1.5 | Duplicative; excessive |
| 9/11/2008 | NB | Drafting Memo in Support of Motion to Authorize Discovery | 1.5 | Duplicative; excessive |
| 9/12/2008 | NB | Drafting Memo in Support of Motion to Authorize Discovery | 2 | Duplicative; excessive |
| 9/15/2008 | NB | Revising Memo to Authorize Discovery | 0.5 | Duplicative; excessive |
| 9/19/2008 | WMB | Motion to authorize discovery | 3.5 | Duplicative |
| 9/19/2008 | NB | Revising Motion to Authorize Discovery and Memo in Support | 0.5 | Duplicative; excessive |

[9]The entry "NB" stands for the time billed by Nicholas Berg.

33

| 1/16/2009 | WMB | Review of Jordan | 3.25 | Inadequate documentation |
|---|---|---|---|---|
| 1/21/2009 | NB | Preparation for travel to TN | 1.5 | Inadequate documentation |
| 2/20/2009 | WMB | Review of Defendant's Answer to Complaint | 1.25 | Excessive |
| 4/16/2009 | WMB | tc & ct with Corcelle | 0.75 | Inadequate documentation |
| 5/18/2009 | WMB | Receipt and Review of Williams Request for Tax Information | 1 | Inadequate documentation |
| 5/28/2009 | WMB | Affidavit of Williams | 1.25 | Duplicative |
| 6/5/2009 | WMB | Document Summary | 6.25 | Inadequate documentation |
| 6/28/2009 | WMB | Interoffice memo to Aaron Hutchinson | 1 | Inadequate documentation |
| 7/10/2009 | WMB | Receipt and Review of Memo in Opposition to Jenkins | 1 | Inadequate documentation |
| 8/24/2009 | WMB | CT Jenkins re: documents to review | 1 | Inadequate documentation |
| 8/30/2009 | WMB | CT Jenkins re: representation | 1 | Inadequate documentation |
| 9/25/2009 | WMB | Expert Report of Dr. Jenkins | 1 | Inadequate documentation |
| 9/25/2009 | WMB | CT Chatelain re: fees, costs | 1 | Inadequate documentation |
| 2/1/2010 | WMB | Memo to file | 2.5 | Inadequate documentation |
| 2/1/2010 | WMB | Memo to file | 1.75 | Inadequate documentation |
| 7/26/2010 | WMB | Review and revise motion in limine | 5.5 | Excessive |
| 7/29/2010 | WMB | Review and revise motion in limine | 2.5 | Excessive |

34

| | | | | |
|---|---|---|---|---|
| 7/30/2010 | WMB | Review and revise motion in limine | 2.5 | Excessive |
| 8/2/2010 | WMB | Review and revise motion in limine | 2.5 | Excessive |
| 8/3/2010 | WMB | Review and revise motion in limine | 2.5 | Excessive |
| 8/10/2010 | WMB | Outline of motion in Limine | 4 | Excessive |
| 8/2/2010-8/11/2010 | NB | Drafting and Revising Motion in limine to exclude legal testimony of Riney Green | 3.25 | Duplicative; excessive |
| 8/2/2010-8/11/2010 | NB | Drafting and revising memo in support of motion in limine to exclude testimony and documents not previously produced | 14.75 | Duplicative; excessive |
| 8/11/2010 | WMB | Revision of Memorandum in Support of Motion in Limine to exclude testimony and documents not previously produced | 10.5 | Duplicative; excessive |
| 8/13/2010 | NB | Motions in limine, memos in support and accompanying exhibits | 2.75 | Duplicative; excessive |
| 8/13/2010 | NB | Reviewing Defendant's motions in limine and motion to continue | 1 | Duplicative; excessive |
| 8/13/2010 | WMB | Review of Exhibits to Motion in Limine | 2.75 | Duplicative; excessive |
| 10/29/2010 | WMB | Preparation for and Meeting with Geralyn Bordelon to review Preliminary Findings of Fact and discuss assignment | 1.75 | Excessive |
| 11/1/2010 | WMB | E-mail to Geralyn Bordelon checking status | 0.25 | Excessive; Inadequate documentation |

Case 1:08-cv-00006   Document 274   Filed 10/18/11   Page 35 of 47 PageID #: 8795

| 11/2/2010 | WMB | Receipt and Review of First draft of citation checks from Geralyn Bordelon; meeting with Geralyn Bordelon | 1.25 | Inadequate documentation |
|---|---|---|---|---|
| 11/9/2010 | WMB | Receipt and Review of Revisions to Findings of Fact citation checks | 1.5 | Excessive |
| 11/9/2010 | WMB | Phone conversation with Geralyn Bordelon re citation format | 0.25 | Inadequate documentation |
| 11/8-11/12/2010 | WMB | Drafting and Editing Findings of Fact | 16.25 | Excessive |
| 11/11/2010 | WMB | E-mail to Nick Berg re Preparation of Findings of Fact, Conclusions of Law | 0.25 | Excessive |
| 11/22-11/24/2010 | WMB | Drafting and Review of Findings of Fact and Conclusions of Law | 16.75 | Excessive |
| 12/2/2010 | WMB | Written communication to and telephone conversation with Chris Williams re Revision to Draft Findings of Fact, Conclusions of Law | 0.5 | Duplicative |
| 12/2/2010 | WMB | Correspondence to Reasonover & Olinde, LLC re Enrollment of Nick Berg | 0.5 | Inadequate documentation |
| 11/28-12/6/2010 | WMB | Finalization of Findings of Fact and Conclusions of Law and Endnotes | 23.75 | Excessive |
| 12/9/2010 | WMB | Review and Citation Check of Defendant's Findings of Fact and Conclusions of Law; Research Response Procedures | 5 | Excessive |
| 2/14/2011 | WMB | E-mail to Nelson re 2/22/11 Mediation | 0.5 | Inadequate documentation |
| 2/17/2011 | WMB | Correspondence to Judge Bryant | 0.5 | Excessive |

36

| 2/18/2011 | WMB | Correspondence to Magistrate Brown | 0.75 | Excessive |
|-----------|-----|-----------------------------------|------|-----------|
| 2/18/2011 | WMB | Preparation of Initial Settlement Memo | 7.25 | Excessive |
| 2/21/2011 | WMB | E-mail to Magistrate Brown | 0.25 | Excessive |
| 2/22/2011 | WMB | Preparation of Second Settlement Conference Statement | 6.25 | Excessive |

Thus, the Court denies 216.75 hours billed by Babovich in the amount of $48,768.75 and 36 hours billed by Nicholas Berg in the amount of $2880 for a total of $51,648.75. Defendants also object to the reasonableness of 105.5 total hours claimed on 5/20/2008 for the total amount of $14,457.50 for responding to Defendants' three motions to dismiss that consisted of only ten pages of text as excessive. The Court concludes that such time is excessive and will reduce the amount allowed to $8674.50. The Court also will deny 3.45 hours billed by Harwell, Plant & Williams for "various calls to Judge Haynes' office" on 3/31/09 and "Research law re: possibility of obtaining life insurance proceeds" on 8/26/09 in the amount of $821.25. Based upon the amount involved and the results obtained, the Court will further reduce the amount requested by 20%.

The Court notes that Plaintiff has not submitted documentation in support of fees in the amount of $8,580 billed by Reasonover & Olinde LLC and fees in the amount of $5,850 and expenses in the amount of $30 billed by Steltmeier & Westbrook and are therefore denied. Local Rule 54.01(b)(1).

Accordingly, the Court will grant Babovich & Spedale its attorney's fees in the amount of $294,267.60 and Harwell, Plant & Williams its attorney's fees in the amount of $33,015.40 for a total award of $327,283.

As to expenses, Section R-45(d) does not mention costs. Section R-45(d) of the Construction Industry Arbitration Rules of the American Arbitration Association states that "[t]he award of the arbitrator may include– an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration." Federal law sometimes allows for some expenses that are included in the concept of attorney's fees, such as reasonable photocopying, paralegal expenses, travel and telephone costs, and legal research. See Northcross v. Board of Ed. of Memphis City Schs., 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds); Haroco, Inc. v. American Nat'l Bank & Trust Co., 38 F.3d 1429, 1440-41 (7th Cir. 1994). Yet, Plaintiff does not cite any authority under Tennessee law for including such expenses as part of its attorney's fees. See Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co., No. 3:09-0545, 2010 WL 4007300, at *1 n.1 (M.D. Tenn. Oct. 12, 2010). Because Section R-45(d) does not allow for recovery of expenses, the Court concludes that Plaintiff's request for expenses should be denied.

### III. INTEREST RATE

Plaintiff contends that Section 13.6.1 of the AIA's General Conditions of Contract that the December 24, 1992 judgment was based provided for interest on the judgment to be applied pursuant to the law of the State of Alabama at 12% per annum non-compounded and applies to the judgment against the Defendants. Plaintiff also contends that the law of case doctrine provides that the Alabama rate should apply. In response, Defendants contend, in sum: (1) that this is a judgment collection case, not a breach of contract case and that any contract interpretation and any damages should have been submitted to the arbitrator;[10] (2) that parties cannot contractually agree to an interest rate other than that set by 28 U.S.C. §1961; (3) that the contract did not provide that the

---

[10]The Court has previously addressed this argument in this opinion.

38

Alabama interest rate would apply post judgment; (4) that the law of the case does not require that the Alabama judicial interest be applied to the instant judgment; and (5) that Defendants have consistently denied Plaintiff's claim that the Alabama interest rate should apply.[11]

Section 13.6.1 provides:

> Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

(Docket Entry No. 239, Exhibit 5 at 23).

On December 23, 1992, the Alabama District Court confirmed the arbitrator's award. (Docket Entry No. 187, at ¶ 8). The district court noted that "[a]lthough the arbitrator's award was in the form of a lump sum, it is clear that the arbitrators awarded at least some amount of delay damages. . . . [T]he claims presented by [Plaintiff] regarding damages other than delay damages totaled only $171,159.00. . . . The arbitrators awarded [Plaintiff] $370,000.00 in damages." (Docket Entry No. 123, Exhibit 1 at 9 n.6). On January 13, 1993, the Alabama court denied Plaintiff's motion seeking prejudgment interest from the date of the arbitration award until the date the court's judgment confirming the award. (Docket Entry No. 239, Exhibit 8). The court stated that it "determined that the damages in this case were 'unliquidated' until the arbitration award was rendered, and that the Plaintiff is not entitled to pre-judgment interest." Id.

The version of 28 U.S.C. § 1961 in effect on December 24, 1992 when the judgment was entered states, in relevant part, as follows:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where,

---

[11]The Court has previously addressed this argument in this opinion.

39

by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

28 U.S.C. § 1961 (1992).[12]

The Sixth Circuit has stated that "[i]n diversity cases . . . federal law controls postjudgment interest but state law governs awards of prejudgment interest." Estate of Riddle ex rel. Riddle v. Southern Farm Bureau Life Ins. Co., 421 F.3d 400, 409 (6th Cir. 2005). While the Sixth Circuit has not squarely addressed whether parties may contract around § 1961 and agree to a different postjudgment interest rate, see Comerica Bank v. Stewart, No. 09–cv–13421, 2009 WL 4646894, at *3–4 (E.D. Mich. Dec. 8, 2009), most courts that have addressed the question have concluded that parties may do so. Jack Henry & Associates, Inc. v. BSC, Inc., 753 F. Supp.2d 665, 667-68 (E.D. Ky. 2010) (citing FCS Advisors, Inc. v. Fair Finance Co., 605 F.3d 144, 147–48 (2d Cir.2010); In re Riebesell, 586 F.3d 782, 794 (10th Cir.2009); Cent. States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir.2001); In re Lift & Equip. Serv., Inc., 816 F.2d 1013, 1018 (5th Cir.1987)); see also Mariner Health Care, Inc. v. Sherrod, No. 09–2613, 2011 WL

---

[12] 28 U.S.C. § 1961(a) was amended in 2000, substituting "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" for "the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to".

2418473, at *4 (W.D. Tenn. June 13, 2011) (acknowledging that "a valid contract may supplant the § 1961 postjudgment interest rate with a different rate.").

In Jack Henry, the district court stated:

> Nothing in § 1961 indicates that Congress sought to limit freedom of contract with respect to postjudgment interest. The text of § 1961 does not expressly limit parties' ability to agree to a different postjudgment interest rate. . . . Of course, contracts specifying a postjudgment interest rate must, like all contracts, be valid—they must comport with general contract law, including state usury laws. But a valid contract may supplant the § 1961 postjudgment interest rate with a different rate. This reasoning squares with the holding of every circuit court that has addressed the question.

753 F. Supp.2d at 668. Noting that many holdings were based upon Investment Service Co. v. Allied Equities Corp., 519 F.2d 508 (9th Cir.1975) that dealt with a different version of § 1961, the court concluded that in accord "with the decisions of every circuit court" "parties may contract around § 1961 and agree to a different postjudgment interest rate" and that "even though many of those decisions rest on a line of cases built upon a questionable foundation, the general rule of freedom of contract compels this result, despite § 1961's mandatory language." Id. at 669-70; accord Mariner Health Care, 2011 WL 2418473, at *4.

Assuming that parties may contract around § 1961 and agree to a different postjudgment interest rate, the Court must determine if the parties did so. As the Sixth Circuit has stated, federal law governs postjudgment interest while state law governs prejudgment interest. Estate of Riddle, 421 F.3d at 409; F.D.I.C. v. First Heights Bank, FSB, 229 F.3d 528, 542-43 (6th Cir. 2000) (noting that Texas law made the rate of some prejudgment interest dependent upon the applicable rate of postjudgment interest, the Court was compelled to defer on that "peculiar issue of Texas law" to adopt the Fifth Circuit's rule that in a diversity case the applicable state postjudgment rate should be

41

used in arriving at the rate of prejudgment interest under Texas law, but held that federal law would still govern any postjudgment interest in the action).

"[F]ederal law requires 'language expressing an intent that a particular interest rate apply to judgments or judgment debts' to be 'clear, unambiguous and unequivocal.'" Jack Henry, 753 F. Supp.2d at 670 (quoting FCS Advisors, Inc. v. Fair Finance Co., 605 F.3d 144, 148 (2d Cir. 2010)). That is because, under federal law, "'[o]nce a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises.'" Id. (quoting Kotsopoulos v. Asturia Shipping Co., 467 F.2d 91, 95 (2d Cir.1972)); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York *and federal law* is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives.") (emphasis added). "'If parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language.'" In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009) (citation omitted). "[A] default rate of interest, without more, does not amount to a postjudgment rate of interest." Comerica Bank, 2009 WL 4646894, at *4. Thus, "[b]ecause the original contract claim merges into the judgment and is extinguished, an interest rate that applies to amounts due under the contract does not automatically apply to the judgment on that contract. The parties must explicitly state that they are agreeing to a postjudgment interest rate." Jack Henry, 753 F. Supp.2d at 670.[13]

---

[13]The Court's conclusion does not alter its earlier conclusion that this action is not a new claim for a judgment debt as that discussion involved Plaintiff's claim of piercing the corporate veil that related back to the actual breach of contract claim and allowed Plaintiff to seek its contract right against BCCI's alter egos. Here, the Court's analysis involves the law to be applied in determining postjugment interest after judgment is entered against BCCI's alter egos on that breach of contract

42

In Jack Henry, the contract's provision at issue stated: "'[a]mounts outstanding after the due date are subject to an interest charge to date of payment of the lesser of 18% per annum or the highest legally allowable rate.'" Id. The district court concluded that the language did "not constitute an agreement on postjudgment interest sufficient to displace the interest rate specified in § 1961," id., as the agreement "did not clearly and unambiguously establish a postjudgment interest rate." Id. at 671. Similarly, the language in Section 13.6.1 does not use clear, unambiguous and unequivocal language to establish the parties' intent for the interest rate to apply post judgment. See Qatar Nat. Bank v. Winmar, Inc., __ F. Supp.2d __, No. 06–1307 (GK), 2011 WL 4469816 (D.D.C. Sept. 28, 2011)

> Under Section 7.2 of the 2005 Agreement, "[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due at the rate [of 12%], or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located." Joint Ex. 1–5. This provision clearly fails to expressly state that the 12% interest rate applies to judgments or judgment debts. Consequently, the Court shall grant Al Jazeera's objection and set the post-judgment interest rate in accordance with 28 U.S. § 1961.

Id. at *4.

Plaintiff's reliance on In re Turner-Dunn Homes, Inc., 2008 WL 5046698, at *2 (Bankr. D. Ariz. Sept. 30, 2008) and In re Frischhertz Const. Co., Inc. 2007 WL 2965049, at *5 (Bankr. E.D. La. Oct. 8, 2007) are unpersuasive as they are outside of this Circuit, do not discuss § 1961 and are at variance with Sixth Circuit and other Circuit precedents in applying federal law to determine postjudgment interest. Further, Plaintiff's reliance on Crossville, Inc. v. Kemper Design Ctr., Inc., 758 F. Supp. 2d 517 (M.D. Tenn. 2010) in support of its contention that under Tennessee substantive law parties may contractually agree to a post-judgment interest rate without specifically referencing

---

claim.

"judgment debts" or, in the alternative, on <u>Carolina Pizza Huts, Inc. v. Woodward</u>, 67 F.3d 294, Nos. 94-2522, 94-2553, 1995 WL 572902 (4th Cir. 1995), <u>Hymel v. UNC, Inc.</u>, 994 F.2d 260 (5th Cir. 1993), <u>Central States v. Bomar National, Inc.</u>, 253 F.3d 1011 (7 Cir. 2001), and <u>Citicorp Real Estate, Inc. v. Smith</u>, 155 F.3d 1097 (9th Cir. 1998) in support of its contention that federal courts have applied contractually agreed upon interest rates without reference to state law or any requirement of specific references to judgment debts are likewise misplaced.

In <u>Crossville</u>, where the contract provided that "upon acceleration due to default, interest shall accrue at 18%" the district court applied the 18% interest rate, citing Tenn. Code Ann. § 47–14–121 that states, "where a judgment is based on a note ... fixing a rate of interest ..., the judgment shall bear interest at the rate so fixed." 758 F. Supp.2d at 531-32. Yet, the contract there specifically provided that it was governed by Tennessee law, 758 F. Supp.2d at 524 n.7, and Tennessee statutory law provided that the post-judgment rate would be the contracted-for rate. Thus, the parties expressed a clear intent to have the agreed-upon rate be the post-judgment rate. Here, Alabama law governs, and Plaintiff has not cited any similar statutory provision. Thus, Plaintiff has failed to provide clear, unambiguous and unequivocal language in the contract or anywhere else that would override § 1961 in this action.

In <u>Carolina Pizza Huts</u>, the Fourth Circuit affirmed a district court's ruling in applying the interest rate in the parties' contract post-judgment. Yet, in its decision, the Court did not quote the contract's language. Thus, this Court is unable to discern if the contract's terms were clear, unambiguous and unequivocal. Further, in affirming the application of the rate agreed upon by the parties, the Court cited <u>Hymel.</u> In <u>Hymel</u>, the Fifth Circuit found, "The note provided that '[a]ll past due interest and/or principal shall bear interest from maturity until paid, *both before and after*

44

*judgment*, at the rate of 9% per annum.'" 994 F.2d 260 at 265-66 (emphasis in original). Moreover, Central States, like Carolina Pizza Huts, did not quote the contract language at issue and also relied on Hymel. 253 F.3d at 1020. Finally, in Citicorp Real Estate, the Ninth Circuit stated:

> At arbitration, Citicorp requested "interest at the default rate set ... in the Note[s] from March 1, 1991 to the date of entry of judgment *and, after judgment until collection.*" The arbitrator's award contained similar language. The arbitrator's award ordered that interest would accrue at the per diem rate specified "until judgment or paid in full."

155 F.3d at 1108 (emphasis in original). The Court concluded, "Here, the parties specifically agreed that the contract rate of interest would be applied even after judgment was entered." Id.

Based upon the foregoing, the Court concludes that the above cases are distinguishable and Plaintiff's reliance on these cases is misplaced.

As to Plaintiff's contention that the law of the case requires that the Alabama judicial interest be applied to the instant judgment, the Court previously determined that it was unable to discern the arbitrator's methodology used in arriving at the $370,000 judgment. There is not any clear, unambiguous and unequivocal language relating to postjudgment interest in the arbitrator's award. Therefore, the Court concludes that Plaintiff's argument is without merit.

Accordingly, the Court concludes that Plaintiff should be awarded postjudgment interest as provided by the manner articulated in 28 U.S.C. §1961 at 3.72% compounded annually from December 24, 1992, until the Judgment is paid in full.

## IV. MOTION TO RECONSIDER

Defendants previously provided a letter of credit in the amount of $390,826.41 under Fed. R. Civ. P. 62(d), and on September 9, 2011, the Court approved the letter of credit and granted a stay of judgment pending appeal, stating that "this stay is effective as long as the letter of credit remains

in effect." (Docket Entry No. 266). Plaintiff contends that the amount of the bond is inadequate under Fed. R. Civ. P. 62(d) and requests the Court to vacate its order approving the letter of credit and granting the stay. In their response, Defendants state that "[h]ere, the only known amounts are the amount of the judgment and the amount of costs taxed by the Clerk. The Defendants' bond secures those amounts. It would be inequitable to require Defendants to post a bond for amounts that have not even been determined, and may not be determined, to be owed by them." (Docket Entry No. 268, at 2).

As the Court has now ruled upon the taxation of costs, attorney's fees and applicable interest rate, the letter of credit is no longer sufficient.

> "[T]he amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay ...." United States ex rel. Lefan v. Gen. Electric Co., 397 F. App'x 144, 151 (6th Cir.2010) (quoting 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2905 (4th ed.2008)); accord O'Callaghan v. SPX Corp., No. 2:09–cv–10196, 2010 WL 299497, at *2 (E.D.Mich. Jan. 20, 2010) ("Generally, courts require that the supersedeas bond include the judgment, pre and post judgment interest, anticipated appellate costs, and damages for delay caused by the appeal.") (citation omitted); Norton v. Canadian Am. Tank Lines, No. 06–411–C, 2009 WL 3172105, at *1 (W.D.Ky. Sept. 29, 2009) ("Courts generally require that the amount of the [supersedeas] bond include the full amount owed under the award, post-judgment interest, attorney's fees and costs." (quoting Verhoff v. Time Warner Cable, Inc., No. 3:05CV7277, 2007 WL 4303743, at *3 (N.D.Ohio Dec. 10, 2007))).

Mariner Health Care, 2011 WL 2418473, at *5.

Accordingly, the Court concludes that its prior Order (Docket Entry No. 266) should be vacated and the letter of credit denied as insufficient.

## V. CONCLUSION

46

Accordingly, for these reasons the Court concludes that Plaintiff's motion to review Clerk's final taxation of costs (Docket Entry No. 270) should be granted in part and denied in part and Plaintiff should recover $5339 in costs; that Plaintiff's motion for attorney's fees (Docket Entry No. 240) should be granted in part and denied in part and Plaintiff should recover a total award of attorney's fees in the amount of $327,283; that Plaintiff's motion to determine the applicable rate of interest (Docket Entry No. 238) is granted and the applicable interest rate as determined by 28 U.S.C. §1961 is 3.72% compounded annually from December 23, 1992, until the Judgment is paid in full; and that Plaintiff's motion to reconsider (Docket Entry No. 267) should be granted and that the Court's prior Order (Docket Entry No. 266) should be vacated and the letter of credit denied.

An appropriate Order is filed herewith.

**ENTERED** this the _16th_ day of October, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge